**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JUSTICE RASIDEEN ALLAH, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 11-3153 (MAS) |
| | : | |
| v. | : | |
| | : | |
| GREG BARTOWSKI, et al., | : | **MEMORANDUM OPINION** |
| | : | |
| Defendants. | : | |

**SHIPP, District Judge**

Plaintiff, Justice Rasideen Allah ("Plaintiff"), a state inmate confined at New Jersey State Prison ("NJSP") in Trenton, New Jersey, at the time he filed this Complaint, seeks to bring this action *in forma pauperis* ("IFP"). Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed IFP pursuant to 28 U.S.C. § 1915(a) (2012) and order the Clerk of the Court to file the Complaint.

The Court must now review the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that Plaintiff's Complaint should be dismissed.

1

## I.   **BACKGROUND**

Plaintiff brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants: Greg Bartkowski ("Bartkowski"), Administrator at NJSP; Michele R. Ricci ("Ricci"), Director of the Division of Operations, New Jersey Department of Corrections ("NJDOC") and former Administrator at NJSP; Christopher Holmes ("Holmes"), Associate Administrator at NJSP; William Moliens ("Moliens"), former Associate Administrator at NJSP; James Barnes ("Barnes"), Assistant Superintendent at NJSP; Crystal Ann Raupp ("Raupp"), Record Keeper, Management Control Unit Review Committee/Acting Supervisor of Social Services at NJSP; Dr. Flora DeFilippo ("DeFilippo"), Supervisor of Mental Health Services for NJSP; Mr. Zell ("Zell"), Professional Services Representative at NJSP; Thomas Steckel ("Steckel"), former Social Services Supervisor at NJSP; Hatima Ismail ("Ismail"), Professional Services Representative at NJSP; Captain Richard Ortiz ("Ortiz"), Custody Supervisor at NJSP; Captain B. Kennedy ("Kennedy"), Custody Supervisor at NJSP; and Lieutenant Alaimo ("Alaimo"), Custody Supervisor at NJSP.  (Compl. Caption and ¶¶ 79-118).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of Plaintiff's allegations.

On or about November 20, 2006, Plaintiff was moved from the administrative segregation unit in the west compound of NJSP and placed on Unit 2B-left in the north compound. (Compl. ¶ 120).  On November 29, 2006, Plaintiff received notice that he was being placed on "Prehearing MCU[1] [Management Control Unit] Detention" pending a hearing before the Management Control

---

[1] "'Management Control Unit (M.C.U.)'" means a close custody unit to which an inmate may be assigned if the inmate poses a substantial threat to the safety of others; of damage to or destruction of property; or of interrupting the operation of a State correctional facility." N.J. Admin Code § 10A:5-1.3 (2012).

Unit Review Committee ("MCURC"). Along with this notice, Plaintiff alleges that he also received forms L.C. 36 "Criteria Record Sheet" and 141-I "Authorization For Prehearing MCU" placement. (Compl. ¶¶ 121-122).

Plaintiff alleges that Form 141-I failed to provide the name of the party recommending or requesting Plaintiff's placement in the MCU. The form did, however, show that Assistant Superintendent Donald Mee, Jr. ("Mee"), the MCURC Chairman, had approved the recommendation. Accordingly, on December 4, 2006, Plaintiff wrote to Ricci requesting a delay in the final decision regarding his placement in the MCU until the identity of the requesting party was established. Plaintiff alleges that Ricci did not respond to his letter. (Compl. ¶¶ 124-126).

Plaintiff next contends that a hearing was held on January 11, 2007, but adjourned by Mee after he agreed to investigate Plaintiff's complaint that the requesting party was not identified. Three memoranda were delivered to Plaintiff regarding the request for postponement. Two were dated December 20, 2006 and are identical, and one was dated January 11, 2007, which also was identical to the others except for the date. (Plaintiff's Exhibits at 64A-64C, Docket No. 1-5). The memoranda essentially summarize Plaintiff's objections and requests, namely, (1) that a witness list was never received by the MCURC from Plaintiff as alleged, (2) that the Criteria Sheet provided was incorrect because it did not include Plaintiff's program participation, and (3) that Plaintiff was found not guilty of some of the prison disciplinary actions underlying his placement in the MCU, and consequently, that the same cannot be used against him. (*Id.*). In response to Plaintiff's concerns, Mee responded in these memoranda that the omission of the identity of the "officer requesting placement" in the Form 141-I Authorization for Pre-hearing MCU was simply a clerical oversight and such omission had no influence on the MCURC with regard to placement consideration. (*Id.*).

3

Plaintiff alleges that a hearing was conducted on January 25, 2007, which lasted about 90 seconds. At the hearing, Plaintiff's eight-page statement outlining violations he claimed the MCURC committed was read into the record. (Plaintiff's Ex. 67-74, Doc. No. 1-5). The MCURC made a final decision to place Plaintiff into the MCU indefinitely. (Compl. ¶¶ 132-33; Plaintiff's Ex. 65-67, Doc. No. 1-5).

Plaintiff sent a ten-page appeal, dated February 21, 2007, to Ricci outlining the same arguments and violations. On March 5, 2007, Ricci upheld the MCURC decision, but allegedy failed to address many of the issues raised by Plaintiff, including his complaint that the requesting party was never identified. (Compl. ¶¶ 134, 135, Plaintiff's Ex. 75-85, Doc. Nos. 1-5 and 1-6).

Plaintiff then filed a Notice of Appeal with the Superior Court of New Jersey, Appellate Division, Docketed as *Justice R. Allah v. N.J. Dep't of Corr.*, A-4422-06T1. On June 3, 2008, the Appellate Division affirmed the MCURC's decision. (Compl. ¶ 136, Plaintiff's Ex. 86-93, Doc. No. 1-6). The New Jersey Supreme Court denied Plaintiff's Petition for Certification. (Compl. ¶ 137).

Plaintiff alleges that he continued to file a dozen or more administrative appeals after the MCURC decided to continue his placement in the MCU. The administrative appeals raised similar issues as presented to the Appellate Division, plus additional claims that the MCURC concealed and/or failed to include certain information in the January 25, 2007 initial placement decision. (Compl. ¶¶ 138-39).

For instance, during Plaintiff's September 17, 2009 MCURC routine hearing, it was revealed for the first time that Ricci was the person who initially recommended Plaintiff for MCU placement in November 2006. (Compl. ¶ 140, Plaintiff's Ex. 94-95). At the March 25, 2010 MCURC routine hearing, Plaintiff learned for the first time that a confidential Special

4

Investigations Division ("SID") report had stated that Plaintiff was directly involved in a conspiracy to conceal a weapon inside NJSP.  (Compl. ¶ 141, Plaintiff's Ex. 96-97).

Plaintiff alleges that an updated confidential SID report by SID Investigator Nancy Zook ("Investigator Zook"), dated September 22, 2010, claimed that Plaintiff was responsible for concealing a .32 caliber handgun and five live rounds of ammunition inside the prison.  The report further claimed that Plaintiff "was involved in a conspiracy to [sell] drugs, launder money, and was identified (via prison business office receipts) as a key figure in some sort of drug and weapon smuggling operation" in the prison.  (Compl. ¶¶ 143-144).  Investigator Zook's report allegedly derived from an undated 2006 confidential report from Senior SID Investigator Raphael Dolce ("Dolce"). (Compl. ¶ 145). This 2006 report was never introduced as part of the MCURC's initial placement decision in 2007.   Moreover, a January 19, 2007 summary of Dolce's confidential SID report mentioned nothing about Plaintiff's involvement in concealing a handgun.  (Compl. ¶¶ 145-146).   Plaintiff further contends he was adjudicated not guilty of many of the charges cited in the confidential SID report. Nevertheless, the MCURC relied upon these charges, in violation of N.J. Admin. Code § 10A:4-9.26(a).   (Compl. ¶¶ 147, 148, Ex. 64 A-C).

Plaintiff also alleges that he did not author a letter that had been seized from another inmate, and which apparently was the basis for the disciplinary charges against Plaintiff. (Compl. ¶ 149).  Plaintiff alleges that another inmate had admitted to authoring that letter before Plaintiff was charged.  (*Id.*)  He also contends that he was denied his request to call certain witnesses, including Investigator Dolce, at his initial placement hearing.   (Compl. ¶¶ 149, 150, Ex 64 A-C).

Several years later, during the March 25, 2010 routine hearing, Plaintiff's request to confront Investigator Dolce was denied because the MCURC declined to revisit any issues relative to the initial placement decision since all administrative and state court appeals had upheld the

5

initial placement decision.  (Compl. ¶ 152, Ex. 96).  Plaintiff contends that this refusal to consider matters relative to the initial placement decision violates N.J. Admin. Code § 10A:5-2.10(e), which purportedly "mandates" that the MCURC review all information regarding the inmate's initial placement decision during each routine review.  (Compl. ¶ 153, Ex. 165-167).

Plaintiff appealed the March 2010 routine review decision to Ricci but she allegedly never responded. (Compl. ¶ 154, Ex. 162-164; 168). Another MCURC routine review was held on June 24, 2010, and Plaintiff informed the MCURC that his appeal from March 2010 was never answered.  (Compl. ¶ 155 Ex. 169). The MCURC allegedly promised to look into the appeal, but never did. (Compl. ¶ 156, Ex. 170-173).   Moreover, Plaintiff alleges that Ricci never responded to Plaintiff's appeal from the June 2010 hearing.  (*Id.*) Plaintiff now asks this Court to review the Defendants' actions as set forth above between December 2009 and December 2010, and also to review the January 2007 initial placement decision.  (Compl. ¶ ¶ 154-157).

Plaintiff alleges that he has exhausted his administrative remedies prior to proceeding with this Complaint.  He states that he filed his final administrative appeal to Bartkowski on January 11, 2011.  Plaintiff notes that his earlier administrative appeals to Ricci were never answered. (Compl. ¶¶ 160-173).

Plaintiff asserts that Defendants have violated his Eighth and Fourteenth Amendment rights, as well as his New Jersey state law rights under the New Jersey Civil Rights Act and numerous provisions of N.J. Admin. Code § 10A:5-2.1 *et seq.*   (Compl. ¶¶ 174-176). Principally, Plaintiff alleges that the Defendants' actions have subjected him to extreme and indefinite solitary confinement that is atypical and a significant hardship compared to the ordinary incidents of prison life, and that such actions were arbitrary, capricious and did not serve any legitimate penological interest. (Compl. ¶ 177).   He also claims that he has been denied

meaningful due process with respect to his initial MCU placement and subsequent reviews, including meaningful and fair reviews on administrative appeal.   (Compl. ¶ 177).

As to the extreme conditions of his solitary confinement, Plaintiff alleges that he is confined to a small "cage" of a cell for 23 hours and 50 minutes every day. (Compl. ¶ 190). He is allowed a 10-minute shower each day and a 90-minute yard period every second or third day. (*Id.*). Plaintiff further alleges that he is not provided rehabilitation programs, and that he is confined next to mentally ill inmates who bang and kick on their cell doors for hours every day, and who do not clean themselves or their cells, which creates an unbearable stench, filth and mice infestation near Plaintiff. (Compl. ¶ 188). Plaintiff also alleges that he is denied drinking water and a toilet while he uses the yard area.   (Compl. ¶ 189).

Plaintiff seeks declaratory and injunctive relief, as well as compensatory damages in the amount of $35.00 per day against each defendant for each day he is held in the MCU, and punitive damages in the amount of $100,000.00 as against each named defendant.   (Compl. ¶¶ 227-230).

## II.     LEGAL STANDARD AND ANALYSIS

### A.     Sua Sponte Dismissal

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity.   The Court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.   28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A.   This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915A. Failure to state claim under § 1915A utilizes the "same standard used for [Fed. R. Civ.

7

P.] 12(b)(6) dismissals." *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012); *Thorpe v. Little*, 804 F. Supp. 2d 174, 180 (D. Del. 2011) (*citing Tourscher v. McCullough,* 184 F.3d 236, 240 (3d Cir. 1999)).

A district court should conduct a three-part analysis when considering a Fed. R. Civ. P. 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* For example, the court is free to ignore legal conclusions or factually unsupported accusations which merely state that "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). Determining plausibility is a "context-specific task which requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (2009). Plausibility, however, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 545). In the end, facts which only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief.  *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

The Court is mindful that the sufficiency of this *pro se* pleading must be construed liberally in favor of Plaintiff, even after *Iqbal*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110-11 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 117 (3d Cir. 2000).

**B.    Section 1983 Actions**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pa.*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**III.    RELEVANT STATUTORY AUTHORITY**

The MCU at NJSP is a close custody unit to which inmates are assigned if they pose a substantial threat (1) to the safety of others, (2) of damage to or destruction of property, or (3) of interrupting the operation of a state correctional facility.   N.J. Admin. Code § 10A:5-1.3, 10A:5-2.5.   An inmate is assigned to the MCU based upon a determination made by the MCURC. N.J. Admin. Code § 10A:5-2.5.   A number of criteria are considered by the MCURC when making this determination, including, *inter alia*, (1) the inmate's disciplinary records, (2) past criminal offenses, (3) the number and location of past institutionalizations, (4) reports by

9

professional staff, (5) reports indicating present involvement in criminal activity in the community or within the correctional facility, (6) evidence of an attitude indicating an unwillingness to follow rules and obey orders, (7) inability to maintain a satisfactory work record as indicated in reports by work supervisors or frequency of job changes, (8) information indicating unsatisfactory adjustment to, or performance in, treatment or rehabilitative programs, and (9) evidence of the inability or unwillingness to house with other inmates in a nondisruptive and nondestructive manner.   N.J. Admin. Code § 10A:5-2.4.

A formal review of each inmate placed in MCU must be made every three months by the MCURC.   N.J. Admin. Code § 10A:5-2.10(a).   At each review hearing, the MCURC "shall again review the information upon which the decision was based to assign the inmate to the MCU." N.J. Admin. Code § 10A:5-2.10(e).   Further, the NJDOC is to conduct a hearing at least once a year to determine whether an inmate's release from MCU would be appropriate.   N.J. Admin. Code § 10A:5-2.11(a).   At this annual hearing, the inmate has the initial burden of showing that the inmate should be released from MCU.   Evidence thereof includes (1) participation in required programs, jobs, educational, and recreational programs, (2) compliance with criteria detailed by the MCURC, (3) no participation in certain prohibited acts for a year, and (4) agreement to reaffirm the obligation to adhere to prison rules and regulations for inmate behavior.   N.J. Admin. Code § 10A:5-2.11(b).

The NJDOC then has the burden of putting forth substantial evidence, "including behavior, correctional facility adjustment, and disciplinary history that the inmate continues to pose an identifiable threat: (1) to the safety of others; (2) of damage to, or destruction of property; or (3) of interrupting the secure and/or orderly operation of a State correctional facility."   N.J. Admin. Code § 10A:5-2.11(c).

10

The New Jersey Administrative Code provides an administrative review process for an inmate's complaints concerning a MCURC decision to continue placement in the MCU. This administrative review process is found at N.J. Admin. Code § 10A:5-2.7, *Appeal of Management Control Unit Review Committee (MCURC) decisions*, which states as follows:

(a) At the time the inmate is provided with the M.C.U.R.C.'s decision, the inmate shall be advised of the opportunity to have the Administrator or designee review the M.C.U.R.C. decision. The inmate shall have one calendar week to submit a letter of appeal. The Administrator or designee may approve or modify any M.C.U.R.C. decision as deemed appropriate. The Administrator or designee may also order further hearings where appropriate.

(b) During the Administrator's review, the following factors shall be considered:
    1. Whether there was compliance with N.J. Admin. Code § 10A:5-2.6;
    2. Whether the decision of the M.C.U.R.C. was based on substantial evidence; and
    3. Whether the decision rendered was appropriate to the inmate's case.

(c) The Administrator's decision shall be forwarded to the inmate in writing within seven business days following receipt of the appeal.

## IV.    <u>ANALYSIS</u>

The Court has carefully considered Plaintiff's Complaint and finds that it must be dismissed for failure to state a claim. Regarding the Eight Amendment claim, Plaintiff fails to allege an objective deprivation of his rights. His Fourteenth Amendment due process claim fails because it is clear from the pleadings that Plaintiff has received the required meaningful reviews by the MCURC regarding his status in the MCU. Finally, the class action claim is moot because the underlying action will be dismissed. The Court shall analyze each claim in turn.

### A.    <u>Eighth Amendment Claim</u>

"The Eighth Amendment's prohibition on 'cruel and unusual punishment' . . . imposes on [prison officials] a duty to provide 'humane conditions of confinement.'" *Betts v. New Castle Youth Dev.*, 621 F.3d 249, 256 (3d Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832

(1994), *cert. denied*, 131 S.Ct. 1614 (2011)).   That is, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"   *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).   For an alleged deprivation to rise to the level of an Eighth Amendment violation, it must "result in the denial of 'the minimal civilized measure of life's necessities.'"   *Id.* at 835 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1982)).

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component.   *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Counterman v. Warren Cnty Corr. Fac.*, 176 Fed. Appx. 234, 238 (3d Cir. 2006).   The objective component requires that the deprivation sustained by a prisoner be sufficiently serious because only "extreme deprivations" are sufficient to make out an Eighth Amendment claim.   *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Rhodes*, 452 U.S. at 347-48.   However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 349.   To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. *Id.* at 347.

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. *See Farmer v. Brennan*, 511 U.S. at 835 (1994); *Wilson*, 501 U.S. at 303.   This component may be fulfilled by demonstrating that prison officials knew of such substandard conditions and "acted or

12

failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." *Ingalls v. Florio*, 968 F. Supp. 193, 198 (D.N.J. 1997).

Here, Plaintiff alleges that housing at the MCU deprives him of a surrounding sanitary environment. He does not allege that he is not given toiletries and cleaning products to keep himself and his own cell clean. His alleged denial of drinking water and a toilet is limited to a 90-minute yard exercise that occurs only several days a week. Based on these limited instances, Plaintiff has not asserted objectively sufficient grounds to support an Eighth Amendment violation. As such, the Court does not need to reach the subjective prong of the analysis.

Plaintiff's Eighth Amendment claim, therefore, will be dismissed with prejudice for failure to state a claim. Leave to amend will not be granted regarding this claim because amendment would be futile. "In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citations omitted). Plaintiff has alleged a specific set of facts regarding his Eighth Amendment Claim. Those specific facts fail to state a claim for relief. Leave to amend is not granted so that a plaintiff can wholesale re-write his complaint or conjure a set of facts which may be sufficient to defeat a motion to dismiss.

**B.   Fourteenth Amendment Due Process Claim**

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To analyze a procedural due process claim, the Court must first determine whether the person was deprived of a liberty or property interest protected by due process. *See Fuentes v. Shevin*, 407 U.S. 67 (1972). If the Court finds that a liberty or property interest is protected by due process, it must then determine what process is actually due. *See Morrissey v. Brewer*, 408 U.S. 471 (1972).

It is well-established that an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or a place of confinement. *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); *see also Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). The custody placement or classification of state prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum*, 427 U.S. at 225. Thus, a convicted inmate, such as Plaintiff, has no liberty interest arising by force of the Due Process Clause itself in remaining in the general population. *See Hewitt v. Helms*, 459 U.S. 460, 466-67 (1983); *Montanye v. Haymes,* 427 U.S. 236, 242 (1976); *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002).

The state, however, may create a protected liberty interest through a statute or regulation requiring placement in the general population under certain circumstances. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). "[M]andatory language in a state law or regulation can create a protected liberty interest only if the alleged deprivation 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Torres*, 292 F.3d at 151 (quoting *Sandin*, 515 U.S. at 484). But "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002); *see also Fraise v. Terhune*, 283 F.3d 506, 522-523 (3d Cir. 2002). Thus, in general, Plaintiff's confinement in MCU does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life in New Jersey, and Plaintiff has no state-created liberty interest in

14

avoiding such confinement.  *See Bowman v. Ricci*, No. 07-2610, 2007 WL 2080066, at *2 (D.N.J.

July 17, 2007); *Lepiscopo v. Harvey*, No. 06-3207, 2006 WL 2403903, at *3 (D.N.J. Aug. 18,

2006).

 Nevertheless, at some point Plaintiff's continued placement in the MCU may implicate

such interest, as an inmate may not be housed in the MCU indefinitely without the prospect of

release.  *See Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (finding that "eight years in

administrative custody, with no prospect of immediate release in the near future, is 'atypical'" and

affected the Plaintiff's liberty interest).   However, even if a lengthy confinement in a restrictive

prison environment amounts to an "atypical and significant hardship in relation to the ordinary

incidents of prison life," *Shoats*, 213 F.3d at 143-44, that finding does not end the inquiry for

purposes of procedural due process.   The question then becomes what process a prison setting

requires.   Such process must allow the prisoner an opportunity to present his views to the prison

official charged with deciding whether to retain him in such a restrictive environment.   *Id.* at

145-46 (citing *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)).

 New Jersey regulations provide for routine reviews every three months and annual reviews

of each inmate assigned to the MCU. N.J. Admin. Code § 10A:5-2.10, 10A:5-2.11.   Plaintiff has

provided documentation with his Complaint that confirms he has received these routine reviews

and annual review hearings as provided by state regulation.   Plaintiff, however, argues that his

initial placement in the MCU was unconstitutional and that his routine reviews—in which he

keeps attempting to relitigate issues already adjudicated regarding his initial MCU placement—are

nothing more than a sham. (Compl. ¶ 177-4).

 The Court finds that Plaintiff has not demonstrated a denial of due process with respect to

his initial MCU placement.   The issues contested by Plaintiff as to the initial MCU placement

decision were appealed by Plaintiff and adjudicated by the Appellate Division of the Superior

Court of New Jersey in *Allah v. N.J. Dep't. of Corr.*, No. A-4422-06T1, decided on June 3, 2008.

The Appellate Division performed a detailed review of the administrative record and found as

follows:

> We are satisfied from our review of the record that the arguments raised by Allah in
> Points I through IV[2] are without sufficient merit to warrant discussion in an
> opinion. R. 2:11-3(e)(1)(A) and (E). We are convinced that the Department's
> decision to place Allah in the MCU is supported by substantial, credible evidence.
> We are additionally convinced that, in making its determination, the Department
> substantially complied with the regulations governing MCU placements.

*Allah v. N.J. Dept. of Corr.*, 2008 WL 2245599, at *3 (N.J. Super. Ct. App. Div. June 3, 2008)

(also attached to Plaintiff's Complaint at Doc. No. 1-6). On September 9, 2008, the New Jersey

Supreme Court denied certification. *Allah v. N.J. Dep't of Corr.*, 196 N.J. 463 (2008).

This Court also takes judicial notice of Plaintiff's other related state court appeals,

specifically, in light of Plaintiff's contentions in the instant lawsuit that he was denied his right to

confrontation and to call witnesses, namely Investigator Dolce, and that his placement in the MCU

was erroneously based on disciplinary infractions for which he was adjudicated not guilty.

First, this Court addresses Plaintiff's appeal from a disciplinary finding that had

---

[2] The four points raised by Allah on appeal to the Appellate Division of the administrative decision
to place him in the MCU, were as follows: Point I) The Department of Corrections' decision to
place appellant on MCU status violates N.J. Admin. Code § 10A:5-2.1(a) and 10A:5-2.3(a), thus
depriving Allah of the state and federal constitutional right to confrontation; Point II) The
Department of Corrections' failure to demonstrate that confidential information was credible
violated N.J. Admin. Code § 10A:5-2.6(b)(3)(i), thus depriving the appellant of the state and
federal constitutional right to confrontation; Point III) The Department of Corrections' decision to
consider appellant's placement onto the MCU unit based largely on charges that were adjudicated
not guilty violates N.J. Admin. Code § 10A:5-2.6(b)(3) and 10A:4-9.26; and Point IV) The
Department of Corrections' decision to place appellant on MCU status violated N.J. Admin. Code
§ 10A:5-2.8(a)(c)(d) and should be reversed. These are essentially the same arguments Allah
raises now in his Complaint, seeking to revisit the initial placement decision, this time in federal
court.

adjudicated Plaintiff guilty of three prohibited acts, namely, (1) unauthorized use of the mail or

telephone; (2) attempting to possess electronic equipment (a cellular phone); and (3) attempting to

commit conduct that disrupts or interferes with the security or orderly running of the correctional

facility.  Significantly, these were some of the disciplinary charges which served as a basis for

Plaintiff's placement in the MCU.  The Appellate Division affirmed the disciplinary rulings in

*Allah v. N.J. Dep't of Corr.,* 2008 WL 190465, *1-2 (N.J. Super. Ct. App. Div. Jan. 24, 2008).

After reciting the factual background of the matter, the Appellate Division rejected Plaintiff's

claims that he should have been provided with the confidential SID report and found that the

disciplinary convictions were supported by substantial evidence in the record. The court stated:

> [A]ppellant claims he should have been provided with the confidential SID report.
> Again, we disagree. When a report includes confidential information, the inmate
> need not be provided with that report, as long as he or she is provided with a concise
> summary of the facts on which the hearing officer makes his or her determination.
> N.J. Admin. Code § 10A:4-9.15(b)(1)(i).   Indeed, the regulations specifically
> preclude a hearing officer from disclosing the identity of an informant to an inmate.
> N.J. Admin. Code § 10A:4-9.15(b)(2).  Here, appellant received a summary of the
> facts, and was not prejudiced by the failure of the hearing officer to provide him
> with the full report.

> Finally, we conclude that the convictions were supported by substantial evidence in
> the record. [*Henry v. Rahway State Prison*, 81 N.J. 571, 579-80 (1980)].  The
> letter SID seized described a plan by inmates to obtain a cell phone for use within
> the institution.  Transcripts of phone calls reveal that appellant had called one of
> the numbers in an attempt to obtain a cell phone.  The transcripts also reveal that
> he was seeking to have a relative purchase food for him and send it to another
> inmate.  The evidence was sufficient to support the charges.

*Allah v. N.J. Dep't of Corr.*, 2008 WL 190465, at *2-3.

Next, this Court observes that Plaintiff's administrative appeals from his continuing

placement in the MCU were not ignored, and indeed, Plaintiff filed another appeal to the Appellate

Division from a final determination of the NJDOC on his continued placement issued on February

24, 2011.  *Allah v. N.J. Dep't of Corr.*, 2012 WL 2345390, *2-3 (N.J. Super. Ct. App. Div. June

21, 2012).   In affirming the final administrative determination of NJDOC for Plaintiff's continued

placement in the MCU, the Appellate Division stated:

> We first dispose of appellant's last argument.  The requirement in N.J. Admin.
> Code § 10A:5-2.10(e) that "[a]t each review" the MCURC "again review the
> information upon which the decision was based to assign the inmate to the [MCU]"
> does not afford him multiple bites of the apple to challenge "all issues relating back
> to the MCURC January 25, 2007 initial placement decision."   Appellant has had
> ample opportunity to participate in numerous routine and annual review hearings
> since that time and on at least one occasion has availed himself, albeit
> unsuccessfully, of judicial appellate review.   This appeal is limited to the February
> 24, 2011 final agency determination and the discrete issues that emanate from that
> determination only.
>
>                              . . . .
>
> Based on our review of the record and applicable law, we are satisfied the MCU
> hearing comported with all due process requirements.   The MCURC considered
> the appropriate criteria, information and documentation, including appellant's
> extensive disciplinary history, which included a detailed explanation of the
> disposition of each charge.   We conclude there is substantial, credible evidence in
> the record to support the agency's decision, and discern no basis on which to reach
> a contrary conclusion.

*Allah*, 2012 WL 2345390, at *4-5 (citation omitted).

The Appellate Division's opinions amply demonstrate that Plaintiff's allegations

concerning purported unconstitutional violations as to his initial MCU placement decision are not

supported by the facts and administrative record. As stated earlier, New Jersey regulations provide

for routine reviews every three months and annual reviews of each inmate assigned to the MCU.

N.J. Admin. Code § 10A:5-2.10, 10A:5-2.11.   The record provided by Plaintiff shows that

Plaintiff received annual reviews and routine reviews as provided by state regulation.   It also

shows that Plaintiff is confined to the MCU based on a combination of factors, including his past

criminal and institutional disciplinary history, which the MCURC has regarded as a threat to the

security and orderly operation of the prison.   As observed by the Appellate Division in Plaintiff's

latest appeal from a final MCU determination in February 2011, Plaintiff continues to incur

disciplinary infractions such as "refusing to submit to a search, refusing to obey, possession of anything not authorized for retention, and possession of another's property." *Allah,* 2012 WL 2345390, at *3.

Moreover, Plaintiff has not demonstrated that his MCU placement reviews did not conform to the requirements under N.J. Admin. Code § 10A:5-2.10 and 10A:5-2.11. The record amply demonstrates that Plaintiff was afforded the opportunity to be heard at his review hearings. Thus, the record belies Plaintiff's assertion that his continued confinement is based on reviews that are conducted in a perfunctory fashion.

Based on the state court appellate decisions set forth above, as well as the facts alleged in the Complaint, this Court finds that Plaintiff's initial and continued placement and classification status in the MCU "comport[s] with the minimum constitutional standards for due process." *Shoats*, 213 F.3d at 147. Plaintiff's confinement in the MCU has been, in accordance with NJDOC regulations, reviewed as prescribed every 90 days and on an annual basis. Plaintiff was given the opportunity to be heard and present his case for release personally at each review. The record provided by Plaintiff with his Complaint, as well as the state court appellate decisions, demonstrate that meaningful reviews were conducted in compliance with the directives of N.J. Admin. Code § 10A:5-2.10 and 10A:5-2.11, and supported by evidence sufficient to pass constitutional muster. Therefore, Plaintiff's due process claim regarding his initial placement in the MCU and his subsequent and periodic reviews, will be dismissed with prejudice, in its entirety, as against all named defendants for failure to state a claim.

Leave to amend will not be granted regarding this claim because amendment would also be futile. The facts alleged by Plaintiff, as well as the appellate record noted above, make it clear that

19

any current claim Plaintiff may have regarding the insufficiency of the review process by the MCURC will fail to state a claim.

### C.     Request to Proceed as a Class Action

Plaintiff makes a general application for leave to proceed as a class action under Rule 23(a) of the Federal Rules of Civil Procedure.   As this Court has determined that Plaintiff's Complaint should be dismissed for failure to state a claim, his request for class certification is rendered moot. Therefore, the request to proceed as a class action is hereby denied.

## V.     CONCLUSION

For the reasons set forth above, the Complaint will be dismissed with prejudice, in its entirety, as against all named defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted. Further, because this Court has dismissed all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).   Finally, Plaintiff's applications for class action status and for appointment of counsel will be dismissed as moot.   An appropriate order follows.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: 11/8/12

20