NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JUSTICE RASIDEEN ALLAH, | : | Civil Action No. 11-3153 (MAS) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| GREG BARTKOWSKI, et al., | : | |
| Defendants. | : | |

**SHIPP, District Judge**

This matter is before the Court upon the motion of Plaintiff Justice Rasideen Allah ("Plaintiff") for reconsideration (ECF No. 10) of this Court's November 8, 2012 Opinion and Order (ECF Nos. 8, 9), which dismissed with prejudice Plaintiff's Complaint, in its entirety, for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). The Court has carefully considered Plaintiff's motion and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court concludes that Plaintiff's motion for reconsideration should be denied.

## I. BACKGROUND

Plaintiff filed a Complaint in June 2011, alleging that numerous New Jersey Department of Corrections ("NJDOC") and New Jersey State Prison ("NJSP") Defendants violated his due process rights under the Fourteenth Amendment with regard to his initial placement in the Management Control Unit ("MCU")[1] at the NJSP and subsequent reviews concerning his

---

[1] The MCU is a close custody unit to which an inmate may be assigned if the inmate "poses a substantial threat to the safety of others; of damage to or destruction of property; or of

continued confinement in the MCU. He also alleged that Defendants violated his Eighth and Fourteenth Amendment rights by subjecting him to extreme and indefinite solitary confinement that constituted atypical and significant hardship compared to the ordinary incidents of prison life.[2]

In screening Plaintiff's Complaint as required under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court found that Plaintiff failed to state a cognizable claim of constitutional deprivation and dismissed the Complaint with prejudice. (ECF Nos. 8, 9.) In particular, with regard to the Eighth Amendment claims, the Court observed that Plaintiff made general allegations that his housing unit in the MCU was unsanitary but did not allege that he was not provided sanitation products to keep himself and his cell clean. Further, Plaintiff alleged that he was denied drinking water and a toilet for only 90 minutes during yard exercise that occurred several times a week. Given these limited allegations, the Court dismissed the Eighth Amendment claim, finding that Plaintiff had not asserted objectively sufficient grounds to support an Eighth Amendment violation under *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1982). (ECF No. 8 at 12-13.)

As to his Fourteenth Amendment claims, the Court determined that Plaintiff did not demonstrate any due process violations with regard to his initial placement and subsequent reviews concerning his assignment in the MCU. The Court took judicial notice of Plaintiff's

---

interrupting the operation of a State correctional facility." N.J. Admin. Code § 10A:5-1.3 (2012).

[2] Plaintiff also asserted various state law violations under the New Jersey Civil Rights Act and numerous provisions of the N.J. Admin. Code § 10A:5-2.1 *et seq.* The Court did not reach these state law claims because it had declined to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c)(3), after having dismissed all federal claims asserted by Plaintiff over which the Court had original jurisdiction.

state court litigation concerning his MCU assignment and found that the state court opinions, as well as the administrative record, demonstrated that Plaintiff's initial MCU placement decision and subsequent placement reviews comported with due process and New Jersey regulatory requirements under N.J. Admin. Code §§ 10A:5-2.10 and 10A:5-2.11. Specifically, this Court stated that "[t]he record provided by Plaintiff with his Complaint, as well as the state court appellate decisions, demonstrate that meaningful reviews were conducted in compliance with the directives of N.J. Admin. Code §§ 10A:5-2.10 and 10A:5-2.11, and supported by evidence sufficient to pass constitutional muster." (ECF No. 8 at 19.)

On or about December 3, 2012, Plaintiff filed this motion for reconsideration. (ECF No. 10.) In challenging the Court's decision, Plaintiff alludes to testimony provided "in another MCU complaint," namely, the deposition testimony of Dr. Flora DeFilippo, a MCU Review Committee member since 2005, taken in *Conquest v. Hayman, et al.*, Civil No. 07-2125 (MLC) (Member cases: *Tillery v. Hayman, et al.*, Civil No. 07-2662 (MLC) and *Stovall v. Hayman*, Civil No. 07-3062 (MLC)).[3] In particular, Plaintiff alleges that Dr. DeFilippo purportedly testified that MCU review hearings conducted between 2005 and 2009 were held in a "perfunctory fashion," and that she had not participated in the decisions to place inmates in the MCU during this time other than to sign off on the decisions as the Mental Health Representative member of the MCU Review Committee. (Plaintiff's Motion at 5.) Plaintiff argues that, based

---

[3] This Court takes judicial notice that the consolidated cases under *Conquest,* No. 07-2125, which raised similar claims of Eighth and Fourteenth Amendment violations concerning the initial MCU placement decisions and subsequent reviews, as well as the conditions of confinement in the MCU, were closed on March 31, 2011, after the Honorable Mary L. Cooper, U.S.D.J., granted summary judgment in favor of the Defendants and against the Plaintiffs on all claims. (*See* March 31, 2001 Opinion and Order, ECF Nos. 91, 92 in *Conquest,* No. 07-2125 (MLC).)

on his characterization of Dr. DeFilippo's deposition testimony,[4] it would be reasonable for the Court to conclude that Plaintiff was denied due process at his initial MCU hearing and subsequent reviews.

Plaintiff also contends that reconsideration is appropriate because the Court had stated in the November 8, 2012 Opinion that Plaintiff's continued placement in the MCU may implicate a liberty interest if he remained in the MCU without any prospect of release. Plaintiff argues that his continued confinement in the MCU "under the current perfunctory system," for almost six years, constitutes indefinite detention.

Finally, Plaintiff disputes this Court's dismissal of the Eighth Amendment claim, asserting that the Court overlooked his allegation that he is sleep deprived due to special needs inmates banging and kicking on their cell doors and walls for hours at a time. He also alleges that the sanitation issue is not limited to his cell but to the common area where the special needs inmates also congregate in "utter squalor" and "constant stench." In particular, Plaintiff alleges that he must suffer the "stench" of human waste from the other common areas, while he is in his cell, due to the centralized ventilation system. Plaintiff further cites case law concerning limited access to toilet facilities with regard to his claim that he is deprived of water and toilet access during his 90 minute recreation yard time. The Court observes that the cited case law involves denial of toilet access for considerable periods of time rather than for the discrete 90-minute yard time as alleged by Plaintiff.

---

[4] Plaintiff provides no specific page and line references to Dr. DeFilippo's deposition testimony to support his characterization.

## II.  DISCUSSION

Plaintiff brings this motion for reconsideration under Local Civil Rule 7.1(i).[5]  Local Civil Rule 7.1(i) permits a party to seek reconsideration by the Court of matters "which [it] believes the Court has overlooked" when it ruled on the motion.  L. Civ. R. 7.1(i); *see NL Industries, Inc. v. Commercial Union Insurance*, 935 F. Supp. 513, 515 (D.N.J. 1996).  "The word 'overlooked' is the dominant term, meaning that except in cases where there is a need to correct a clear error or manifest injustice, '[o]nly dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration." *Leja v. Schmidt Mfg., Inc.*, 743 F. Supp. 2d 444, 456 (D.N.J. 2010) (citation omitted); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) (citation omitted).

It is well settled that a motion for reconsideration is an extraordinary remedy and should be granted "very sparingly." *See Caver v. City of Trenton*, 420 F.3d 243, 258 (3d Cir. 2005); *Fellenz v. Lombard Inv. Corp.*, 400 F. Supp. 2d 681, 683 (D.N.J. 2005); *Tehan v. Disab. Mgmt. Servs., Inc.*, 111 F. Supp. 2d 542, 549 (D.N.J. 2000) (citation omitted).  The scope of a motion for reconsideration is "extremely limited" and may not "be used as an opportunity to relitigate the case." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011).  Thus, a movant seeking reconsideration must show: (1) an intervening change in controlling law; (2) the availability of new evidence that was previously unavailable; or (3) the need to correct a clear error of law or

---

[5] While motions for reconsideration are not expressly permitted by the Federal Rules of Civil Procedure, motions for reconsideration are considered motions to amend or alter a judgment under Rule 59(e) or a motion for relief from judgment under Rule 60(b).  *U.S. v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999).  For the purposes of this analysis, Rule 7.1(i) is essentially the same as Rule 59(e).  *See Database Am., Inc. v. Bellsouth Advert. & Publ'g Corp.*, 825 F. Supp. 1216, 1220 (D.N.J. 1993).

fact or to prevent manifest injustice. *See Lazardis v. Wehmer,* 591 F.3d 666, 669 (3d Cir. 2010); *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)); *Allah v. Ricci*, No. 08-1753 (JAP), 2012 WL 4341207, *1 (D.N.J. Sept. 21, 2012).

The moving party seeking reconsideration may not "relitigate old matters" or "raise argument or present evidence that could have been raised prior to the entry of judgment." *Boretsky v. Governor of N.J.*, 433 F. App'x 73, 78 (3d Cir. 2011) (quoting *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009)); *Dunkley v. Mellon Investor Servs.*, 378 F. App'x 169, 172 (3d Cir. 2010); *Bowers*, 130 F. Supp. 2d at 613 (reconsideration is not a means to expand the record to include matters not originally before the court). "This prohibition includes new arguments that were previously available, but not pressed." *Wilchombe*, 555 F.3d at 957 (citation omitted) (internal quotation marks omitted); *see also Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 145 (D.N.J. 2009) ("A motion for reconsideration will [ ] fail if the moving party raises argument[s] . . . that could have been raised . . . before the original decision was reached.")

Consequently, a difference of opinion with the court's decision should be dealt with through the normal appellate process. *Bowers*, 130 F. Supp. 2d at 612 (citations omitted). In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." *Clark v. Prudential Ins. Co. of America*, --- F. Supp. 2d ----, 2013 WL 1694451, * 2 (D.N.J. Apr. 18, 2013) (quoting *Tishcio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 533 (D.N.J. 1998). With this framework in mind, the Court finds that reconsideration of its prior ruling is not warranted.

6

The Court first addresses Plaintiff's submission of "new" evidence, namely, Dr. DeFilippo's deposition testimony. New evidence is not the equivalent of evidence that a party simply obtains after an adverse ruling. *Howard Hess Dental Laboratories, Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 252 (3d Cir. 2010). Rather, the key difference of "new evidence" is that it could not have been submitted earlier because it was unavailable. *Id.* The Court finds that Dr. DeFilippo's deposition testimony was available to Plaintiff before this Court's November 8, 2012 ruling, but Plaintiff simply obtained the transcript after the Court dismissed Plaintiff's Complaint.

Furthermore, reconsideration of "new evidence" is only permissible if that evidence would have altered the disposition of the case. *See Interfaith Cmty. Org. Inc. v. PPG Indust., Inc.*, 702 F. Supp. 2d 295, 317 (D.N.J. 2010), *reconsideration denied* (July 12, 2010). Nothing in Dr. DeFilippo's deposition testimony would cause this Court to alter its decision dismissing Plaintiff's action. Indeed, as noted above, the Court determined that the administrative record and state court opinions regarding Plaintiff's due process claims showed that Plaintiff's initial MCU placement decision and subsequent placement reviews comported with due process and New Jersey regulatory requirements under N.J. Admin. Code §§ 10A:5-2.10 and 10A:5-2.11. Specifically, this Court stated that "[t]he record provided by Plaintiff with his Complaint, as well as the state court appellate decisions, demonstrate that meaningful reviews were conducted in compliance with the directives of N.J. Admin. Code §§ 10A:5-2.10 and 10A:5-2.11, and [were] supported by evidence sufficient to pass constitutional muster." (ECF No. 8 at 19.) Thus, Dr. DeFilippo's purported deposition testimony as to her role generally in initial MCU placement and subsequent reviews between 2005 and 2009, as characterized by Plaintiff, does not alter the

7

Court's determination, which found that Plaintiff's actual reviews and supporting evidence concerning his MCU placement reviews comported with due process.

Further, because this Court rejected Plaintiff's contention in his Complaint that his MCU placement was the result of a "perfunctory system," the Court found no deprivation of liberty interest associated with his confinement in the MCU. The Court did observe that Plaintiff's continued placement in the MCU may, in the future, implicate a liberty interest if Plaintiff could show that he is confined there indefinitely without the prospect of release. However, on the facts available in the Complaint, there was no basis to conclude that his MCU placement was indefinite.

Plaintiff further argues that the Court overlooked *Wilkinson v. Austin*, 545 U.S. 209 (2005), which held that state inmates had a Fourteenth Amendment liberty interest in avoiding assignment to a state's "supermax" prison, where almost all human contact was prohibited for inmates placed in the facility, duration of the assignment was indefinite, and assignment disqualified an otherwise eligible inmate for parole consideration. *Id*. at 223-24.[6]   However, the *Wilkinson* Court also held that an inmate's liberty interest may be adequately protected by a state's informal, non-adversary procedures for placement. *Id*. 225-227. Because this Court found, in the November 8th Opinion that Plaintiff had been afforded sufficient procedural safeguards in the initial MCU placement and subsequent reviews, this Court's analysis was

---

[6] This Court generally referred to the *Wilkinson* case in its November 8, 2012 decision for the proposition that an inmate does not have a liberty interest in assignment to a particular custody level or security classification or place of confinement. *Id*. at 221-22.

consistent with the holding in *Wilkinson*.[7] Plaintiff's allegation that he has been confined in the MCU for six years is not sufficient, alone, to alter the Court's determination.

Finally, with regard to his Eighth Amendment claims, Plaintiff argues that this Court overlooked his allegation that he is sleep-deprived due to special needs inmates banging on their cell doors and walls for hours at a time. He appears to contend that this condition, together with his allegations of an unsanitary environment and limited access to a toilet and water during his yard time, constitute inhumane conditions of confinement in violation of his Eighth Amendment right against cruel and unusual punishment. Further, Plaintiff disagrees with this Court's ruling that lack of access to a bathroom and water fountain during his 90-minute yard time does not rise to the level of an Eighth Amendment violation.

Plaintiff cites three cases in support of his denial of toilet access claim. All of these cases deal with deprivations or lack of toilet access for substantial periods of time: *Lafaut v. Smith*, 834 F.2d 389 (4th Cir. 1987) (no handicap accessible toilet for handicapped inmate for eight months), *Palmer v. Johnson*, 193 F.3d 346 (5th Cir. 1999) (17-hour period of deprivation), and *Johnson v. Lewis*, 217 F.3d 726 (9th Cir. 2000) (four-day period of deprivation). Plaintiff's allegation of a mere 90-minute lack of access to a toilet while he is in yard time clearly does not rise to the level of a constitutional deprivation as found in the significantly longer periods addressed in the above-cited cases. Moreover, he admits in his motion that he "now attends a yard which has a working toilet and drinking water." (Pl. Motion at 19.)

---

[7] In fact, in this case, the New Jersey state procedures for placement and review in the MCU are more favorable to inmates than those procedures approved in the *Wilkinson* case. For instance, the procedures in *Wilkinson* provided only for an annual review, whereas Plaintiff here is entitled to 90-day reviews under the MCU procedures.

As to overlooking the sleep deprivation claim, Plaintiff provides no facts to show that this condition has endured for a lengthy or consistent period of time. As to allegations of unsanitary conditions from exposure to special needs inmates who do not clean themselves, the Complaint does not allege that the unsanitary conditions are present in his cell and common area. Rather, Plaintiff alleges that the special needs inmates do not take care of their cells and common areas, and the "stench" from this "cannot be escaped due to a centralize[d] ventilation system." (Pl. Motion at 18.) This Court did not overlook this claim, and did address Plaintiff's "surrounding sanitary environment." (ECF No. 8 at 13.) However, the Court found that Plaintiff was given toiletries and sanitation products to keep his area clean. Moreover, the Court determined that the limited allegations concerning the conditions of his confinement did not, in combination, rise to the level of a constitutional deprivation in violation of the Eighth Amendment.

Thus, in reviewing Plaintiff's motion for reconsideration overall, the Court finds that Plaintiff has not demonstrated that this Court actually "overlooked" a factual or legal issue that may alter the disposition of the matter, which is necessary for the Court to entertain the motion for reconsideration. He has not presented the Court with changes in controlling law, factual issues that were overlooked, newly discovered evidence, or a clear error of law or fact that would necessitate a different ruling in order to prevent a manifest injustice. Instead, Plaintiff simply disagrees with this Court's prior decision. Consequently, Plaintiff cannot satisfy the threshold for granting a motion for reconsideration here. His only recourse, if he disagrees with this Court's decision, should be via the normal appellate process. He may not use a motion for reconsideration to re-litigate a matter that has been thoroughly adjudicated by this Court.

## III. **CONCLUSION**

For the reasons set forth above, Plaintiff's motion for reconsideration (ECF No. 10) is denied. An appropriate Order follows.

_MICHAEL A. SHIPP_

**MICHAEL A. SHIPP**
**United States District Judge**

Dated: 7/30/13