**\*\* NOT FOR PUBLICATION \*\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JUSTICE RASIDEEN ALLAH, | : | |
| Plaintiff, | : | Civil Action No. 11-3153 (MAS) (TJB) |
| v. | : | **MEMORANDUM OPINION** |
| GREG BARTKOWSKI, et al., | : | |
| Defendants. | : | |

This matter comes before the Court on a civil Complaint by Plaintiff Justice Rasideen Allah pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights have been violated by Defendants due to his placement in the Management Control Unit ("MCU").[1] Plaintiff asserts both Eighth Amendment claims regarding his conditions of confinement while in the MCU, as well as Fourteenth Amendment due process claims regarding his initial placement, and the subsequent decision to keep him, in the MCU. Presently before the Court are two motions to dismiss by Defendants (the "Motions"), (ECF Nos. 81 & 83), raising substantially identical arguments for dismissal. It appearing:

1. The Court previously dismissed all claims with prejudice upon its *sua sponte* screening pursuant to 28 U.S.C. § 1915(e)(2), finding that the Complaint failed to state a claim on which relief may be granted, and that amendment would be futile. (*See* Memo. Op. 8, Nov. 8, 2012, ECF

---

[1]     MCU is a close custody unit to which an inmate may be assigned if the inmate "poses a substantial threat to the safety of others; of damage to or destruction of property; or of interrupting the operation of a State correctional facility." N.J. Admin. Code § 10A:5-1.3.

No. 8.) Plaintiff filed a motion for reconsideration, (ECF No. 10), which the Court denied, (Order, July 30, 2013, ECF No. 13).

2. Plaintiff appealed. (Notice of Appeal, ECF No. 15.) The Third Circuit vacated this Court's dismissal, and remanded the case for further proceedings. (*See* Mandate, Aug. 11, 2014, ECF No. 20.) In its decision, the Third Circuit found that (1) the Complaint alleged sufficient factual allegations to state Eighth Amendment conditions of confinement claims regarding Plaintiff's confinement in the MCU, (*see* Op. 6-7, July 18, 2014, ECF No. 20-1), and (2) the Complaint alleged sufficient factual allegations to state Fourteenth Amendment claims that the administrative hearings (placing and keeping Plaintiff in the MCU) were constitutionally defective, violating his procedural due process rights, (*id.* at 8-9). The Third Circuit noted, without deciding, that the state court's findings, in Plaintiff's appeals of the administrative decisions to place and keep Plaintiff in the MCU, "may have a preclusive effect on Allah's Fourteenth Amendment claims." (*Id.* at 9 n.3.)

3. Upon remand, Defendants filed the instant Motions, contending that the *Rooker-Feldman* doctrine precludes this Court from adjudicating Plaintiff's Fourteenth Amendment claims. To invoke the *Rooker-Feldman* doctrine, Defendants must satisfy four requirements: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *B.S. v. Somerset County*, 704 F.3d 250, 260 (3d Cir. 2013) (citation and quotation omitted). "*Rooker-Feldman* . . . is a narrow doctrine, confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Williams v. BASF Catalyst LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (quoting *Lance v. Dennis*, 546 U.S. 459, 464 (2006)). The doctrine

requires that "the federal claim was actually litigated in state-court prior to the filing of the federal action or . . . [that] the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state-court was wrong." *Jonas v. Gold*, 627 F. App'x 134, 137 (3d Cir. 2015) (quoting *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005)).

4. Defendants argue that the aforementioned state court decisions, affirming the initial and continued placement of Plaintiff in the MCU, "demonstrate[d] that Allah's claims in this federal case mirror the claims he already had an opportunity to litigate [in state court]", and as such, "Allah is not entitled to federal relief because there is no indication that the Appellate Division 'was wrong.'" (Defs.' Br. 6-8, ECF No. 81-2.) The Court disagrees. The Court's review of both of the state court decisions reveals that, unsurprisingly, those decisions primarily dealt with whether Plaintiff was correctly placed and kept in MCU confinement. *See Allah v. N.J. Dep't of Corr.*, 2012 WL 2345390, at *5 (N.J. Super. App. Div. June 21, 2012); *Allah v. N.J. Dep't of Corr.*, 2008 WL 2245599, at *3 (N.J. Super. App. Div., June 3, 2008). For example, in the latest appeal, the appellate court disposed of much of Plaintiff's claims regarding procedural defects by confining the appeal "to the February 24, 2011 final agency determination and the discrete issues that emanate from that determination only." *Allah*, 2012 WL 2345390, at *4. Based on that confinement, it held that "[a]s to appellant's rhetorical questions of 'first impression,' we do not provide advisory opinions. We will address only specific issues raised by appellant relevant to this appeal." *Id.* (internal citation omitted). What little review of procedural issues the state court did reach essentially concluded that the administrative hearings substantially complied with state regulations. *Id.*; *Allah*, 2008 WL 2245599, at *3 ("We are additionally convinced that, in making

3

its determination, the Department substantially complied with the regulations governing MCU placements.").

5. However, as the Third Circuit stated, here, Plaintiff's Fourteenth Amendment claims concern his *procedural* due process rights under federal law. In that regard, "the relevant inquiry is what process [plaintiff] received, not whether the state court decided the case correctly." *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011). This Court is constrained by the Third Circuit's finding that the Complaint has facially stated valid procedural due process claims based on Plaintiff's extensive allegations of defects that occurred at his administrative hearings. (*See* Op. 8, July 18, 2014.) What limited review the state court may have conducted on Plaintiff's procedural due process claims were too narrow in scope to encompass the entirety of Plaintiff's claims here in this Court. *See Vitek v. Jones*, 445 U.S. 480, 491 (1980) (holding that procedural due process protection is "a matter of federal law, [and is] not diminished by the fact that the State may have specified its own procedures that it may deem adequate"). In other words, a finding of liability on Plaintiff's Fourteenth Amendment claims would not be logically inconsistent with the state court's judgments; the state court's determination, that Plaintiff's placement in the MCU was proper, may have been entirely correct irrespective of the alleged procedural defects. As such, the Court finds that *Rooker-Feldman* does not apply.[2]

---

[2]     Defendants' reliance on *Barnes v. Domitrovich*, 184 F. App'x 164 (3d Cir. 2006) is inapplicable here. The Third Circuit upheld the district court's dismissal based on the *Rooker-Feldman* doctrine because it concluded that "Barnes' claims were either actually litigated in the state courts and/or are so inextricably intertwined with the state court adjudication of his parental rights." *Id.* at 166. The Court does not reach that conclusion in this case. Similarly, Defendants' arguments in their reply briefs regarding preclusion are equally unpersuasive. The Court does not dispute Defendants' assertion that "the Appellate Division considered the evidence and claims raised by Allah during both appeals, and found that his initial and continued confinement to the MCU was supported by substantial, credible evidence[.]" (Defs.' Reply 4, ECF No. 88.) However, as stated above, this Court does not concern itself with the validity of Plaintiff's confinement in the MCU. The inquiry squarely before this Court is whether Plaintiff received adequate procedural

4

6.   To the extent Defendants are arguing that the state court reviews served as separate protection of Plaintiff's procedural due process rights, independent of the administrative hearings—and, thus, cured any potential defects in those hearings—Defendants cite to no authority, and the Court finds none, to support that argument.  There is case law suggesting that a subsequent *de novo* review might cure a constitutionally defective administrative proceeding.  *See Spencer v. U.S. Dep't of Agric.*, 142 F.3d 436 (6th Cir. 1998); *Haskell v. U.S. Dep't of Agric.*, 930 F.2d 816, 820 (10th Cir. 1991).  Here, however, as the state court pointed out in its ruling, Plaintiff did not receive *de novo* review at the state court level.  *See Allah*, 2012 WL 2345390, at \*5 ("The scope of our review in an appeal from a final decision of a state administrative agency is strictly limited.").  This Court is bound by the Third Circuit's finding with regard to the administrative hearings allegations, and Plaintiff's limited review on appeal did not cure those alleged defects.  Accordingly, the Court denies the Motions on the Fourteenth Amendment claims.

7.   Finally, Defendants Greg Bartkowski and Michele R. Ricci move to dismiss all claims against them, arguing that those claims are impermissibly premised on a supervisory liability theory.  In a § 1983 claim, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates[.]"  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id.*  While affirmative action by a supervisory official is not required to state a § 1983 claim, Plaintiff must still show that "a supervisor . . . had knowledge and acquiesced in the subordinate's unconstitutional conduct."  *Barkes v. First Corr. Med. Inc.*, 766

---

protection during the administrative hearings, regardless of outcome.  As the Court finds above, the procedural issues have not been fully decided by the state court.  If there are specific issues that Defendants believe may be precluded from litigation in federal court, they may file the appropriate pretrial motions to limit the issues at trial.

F.3d 307, 316 (3d Cir. 2014) (rev'd on other grounds); *see Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."). "[A]llegations [that] . . . merely assert their involvement in the post-incident grievance process" are insufficient to establish liability. *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005). "Merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015).

8. However, there is case law suggesting that repeated written complaints to a supervisory defendant of an *ongoing* constitutional violation may be sufficient to establish the deliberate indifference by circumstantial evidence. *See, e.g., Cardona v. Warden – MDC Facility*, No. 12-7161, 2013 WL 6446999, at *5 (D.N.J. Dec. 6, 2013) (holding that plaintiff has stated a valid denial of medical services claim against the prison warden because plaintiff alleged an ongoing constitutional violation, and alleged that the warden was made aware of the ongoing violation through repeated written requests); *Carter v. Smith*, No. 08-279, 2009 WL 3088428, at *6 (E.D. Pa. Sept. 23, 2009) ("Where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly.") (quoting *Harnett v. Barr*, 538 F. Supp. 2d 511, 524–25 (N.D.N.Y. 2008)). These cases require the plaintiff to establish an ongoing violation that can be remedied by the supervisory official. Grievances of past violations will not do because the supervisor's actions, or lack thereof, would not have caused the plaintiff additional injury. *See Robinson v. Ricci*, No. 08-2023, 2012 WL 1067909, at *10 (D.N.J. Mar. 29, 2012) (finding no personal involvement when a supervisory official was made aware of a constitutional violation

after it had already occurred); *Carter*, 2009 WL 3088428, at *6 (distinguishing allegations of ongoing violations from those that already occurred).

9.   Here, the Complaint details the numerous attempts by Plaintiff to notify Bartowski and Ricci of both his allegedly unconstitutional placement in the MCU and the deplorable conditions of his confinement.  (Compl. 26-28, 31, 33, ECF No. 1.)  Although Bartowski and Ricci were always involved in the grievance review process, Plaintiff nevertheless alleges that they at times ignored the appeals he filed, and at other times simply passed over many of the arguments he made in the appeals.  The Court acknowledges that Plaintiff's claims against Bartowski and Ricci are borderline—on the one hand, merely responding to grievances does not rise to the level of personal involvement necessary to state an Eighth Amendment violation, but on the other hand, deliberately ignoring issues raised by Plaintiff of an obvious ongoing violation, even during grievance review process, does suggest knowledge and acquiescence.  At this stage of the case, the Court cannot say that Plaintiff's claims are facially meritless; indeed, if Bartowski and Ricci, in reviewing Plaintiff's appeals, intentionally addressed some arguments but ignored others, that could potentially serve as circumstantial evidence showing they were deliberately indifferent to Plaintiff's due process rights.  *See Abrante v. Guarini*, No. 12-6860, 2014 WL 5795596, at *5 (E.D. Pa. Nov. 7, 2014) (finding that plaintiff had sufficient stated a supervisory claim where "Defendants received and read the multiple general request forms he submitted on these issues, but ignored or discarded them, rejected them without explanation, or inaccurately responded that [he] had refused treatment").  Plaintiff also alleges that his placement in the MCU may have been an act of retaliation by Ricci because he assisted another inmate on legal matters, (*id.* at 12), which, if true,

would be evidence of motive for Ricci to intentionally ignore Plaintiff's grievances.[3]   The Court

finds that the Complaint has sufficiently alleged personal involvement by Bartowski and Ricci in

depriving Plaintiff's constitutional rights to survive dismissal, and therefore the Motions on these

claims are denied.

_____

Michael A. Shipp, U.S.D.J.

Date:

---

[3]      The Court makes clear it does not find that Plaintiff has asserted an independent claim of
retaliation.  Inmates cannot state claims of retaliations based on their assistance of other inmates
in legal matters.  *See Shaw v. Murphy*, 532 U.S. 223, 225 (2001) (finding that "prisoners [do not]
possess a First Amendment right to provide legal assistance [to other inmates] that enhances the
protections otherwise available").