**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JUSTICE RASIDEEN ALLAH, | |
| Plaintiff, | Civil Action No. 11-3153 (MAS) (TJB) |
| v. | |
| GREG BARTKOWSKI, *et al.*, | **OPINION** |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court on the unopposed summary judgment motions filed by Defendant DeFilippo (ECF No. 305) and the remaining Defendants (ECF No. 306). Despite being provided more than two years in which to do so, Plaintiff did not file formal opposition[1] to the

---

[1] Defendants' motions were filed in December 2023. (ECF Docket Sheet.) Plaintiff subsequently filed multiple extension requests, which the Court granted. (*See* ECF Nos. 308-313.) Plaintiff later filed correspondence suggesting that he filed opposition papers that were never received by the Clerk. (ECF Nos. 314-15.) Plaintiff then failed to file opposition in response to an extension granted by the Honorable Georgette Castner, U.S.D.J., who was previously assigned to this matter. Instead, Plaintiff filed purported emergency motions, which the Court construed as extension requests and granted. A final extension permitted Plaintiff's opposition to be filed by January 2025. (*See* ECF Nos. 315-24.) In February 2025, Defendants requested that the Court treat their motions as unopposed (ECF No. 323) and the Court granted the request (ECF No. 324). Notwithstanding that Defendants' motions were deemed unopposed, in September 2025, Judge Castner ordered Defendants to provide the full transcripts of Plaintiff's deposition and a statement of material facts supporting all their claims. (ECF No. 329.) Defendants complied. (*See* ECF Nos. 332-35; 342.) The Court later provided Plaintiff with a final opportunity to file his opposition and a statement of material facts in dispute in response to Defendants' supplemental filings. Plaintiff, however, only filed correspondence opposing Defendants' extension request. (ECF No. 337.) The correspondence contained brief arguments regarding summary judgment issues but contained no counter statement of material facts. Because Defendants' motions have already been deemed unopposed and Plaintiff failed to respond to them in a timely fashion and to produce a counter statement of material facts, the Court treats Defendants' motion as unopposed, and finds that Plaintiff failed to provide actual opposition to the summary judgment motions.

motions, nor did he file a responsive statement of material facts. (ECF Docket Sheet.) Also before the Court is Plaintiff's purported emergent motion for access to Plaintiff's legal papers. (ECF No. 336.) For the following reasons, Defendants' Motions shall be granted in part and denied in part, and Plaintiff's Motion shall be denied without prejudice as moot.

## I.    BACKGROUND

The following facts are drawn largely from Defendants' unopposed statement of material facts, which are deemed undisputed for the purposes of this Opinion. Plaintiff is an inmate who has been confined in New Jersey State Prison since 2003. (ECF No. 306-2 at 1; ECF No. 330-1 at 12.) Following the confiscation of a letter which revealed an apparent scheme by Plaintiff to smuggle and sell a number of cell phones and other contraband to other inmates, Plaintiff was confined to the prison's Management Control Unit ("MCU") in November 2006. (ECF No. 306-2 at 1-2.) "The MCU is 'a close custody unit' in the [prison to which an] inmate may be assigned . . . if the [MCU] Committee (["]MCURC["]) finds that the inmate poses a substantial threat to the safety of others, of damage or destruction of property; or of interrupting the operation of the" prison. *Allah v. N.J. Dep't of Corr.*, No. A-4422-06T1, 2008 WL 2245599, at *1 (N.J. App. Div. June 3, 2008). The MCURC determined that Plaintiff fit this standard in light of his contraband smuggling scheme following a hearing on January 25, 2007. (ECF No. 306-2 at 2.) Plaintiff appealed this determination, but the decision was upheld by the prison's warden in March 2007. (*Id.*) The New Jersey Appellate Division affirmed the placement decision. (*Id.*) Since his initial placement, Plaintiff has received a number of annual and routine review hearings which extended his time in the MCU, which have in turn been affirmed by the Appellate Division. (*Id.* at 3-4.)

In 2016, during an appeal of one of those hearings, Plaintiff raised to the Appellate Division, for the first time, a 2009 deposition in which Defendant DeFilippo testified that she had not seen herself as a member of the MCURC despite attending its meetings, and had not weighed

any evidence or participated in the MCURC's ultimate decision in Plaintiff's initial MCU placement in 2007. *See Allah v. N.J. Dep't of Corr.*, 2016 WL 4821207, at *9 (N.J. Super. Ct. App. Div. Sep. 12, 2016). The Appellate Division, based on this testimony, remanded the matter for a new initial placement decision by the MCURC. The Appellate Division found that DeFilippo's testimony established that she had failed to fulfill her role as one of the three members of the MCURC in Plaintiff's initial placement. Because all MCURC members were required by state regulation to consider and weigh all evidence before a placement decision issued, Plaintiff was entitled to a new initial placement hearing. *Id.* Despite this finding, the Appellate Division permitted Plaintiff to remain in the MCU until the hearing could be conducted considering the "substantial evidence" that Plaintiff's 2007 initial placement was warranted in light of the smuggling scheme and Plaintiff's significant history of prison infractions. *Id.* Although the Appellate Division ordered that any hearings prior to 2009 in which DeFilippo had participated should be reconducted, the Appellate Division upheld all of Plaintiff's later proceedings, finding that they had comported with the requirements of the relevant state procedural rules. *Id.* at 10-11.

Plaintiff received his new initial placement review on May 8, 2017. (ECF No. 306-2 at 8.) Based on the substantial evidence available in the record and Plaintiff's history, the MCURC again found that Plaintiff's placement in the MCU was warranted. (*Id.* at 8-9.) Plaintiff appealed this finding, and the Appellate Division affirmed the MCU placement. (*Id.* at 9.) The Appellate Division again remanded, however, for rehearings of any remaining review hearings in which DeFilippo had participated prior to June 2009. (*Id.*) Because MCURC records indicated that DeFilippo did not participate in any of Plaintiff's remaining annual or routine reviews prior to 2009, no further rehearings were held. (*Id.* at 10.) Although the MCURC did conduct this remanded initial review as instructed, Plaintiff was ultimately released from the MCU into the prison's general population on March 18, 2016. (*Id.* at 15.)

3

In addition to the Due Process claims related to his MCU placement, Plaintiff asserts that he was exposed to unconstitutional conditions of confinement during his MCU placement. At his deposition, Plaintiff asserted that: (1) his Eighth Amendment claims arose from limited access to bathroom or water during his recreation periods, which normally ran approximately ninety minutes, three times a week; (2) there were, at times, mice infestations in the MCU, including in the unit's showers; (3) an adjacent cell inhabited by a special needs inmate produced noxious odors and occasional bug problems because of abandoned food items left on the floor by the other inmate; and (4) the unit would sometimes otherwise smell of urine or feces. (*See* ECF No. 330-1 at 89-97.) Although Plaintiff alleged in his operative complaint that he had sleeping difficulties based on loud and frequent noises from other inmates, he did not testify to this at his deposition. Plaintiff also did not provide clear deposition testimony regarding the length of time any of these conditions existed or how frequently they occurred. (*Id.*)

Prison records indicate that when Plaintiff complained about the smells from a nearby cell, prison officials responded by cleaning the cell with bleach. (ECF No. 342 at 3; ECF no. 342-1 at 129.) Plaintiff's letters to prison staff also reflect that when he complained about water access during recreation, water coolers were provided, although Plaintiff found them inadequate. (*See* ECF No. 342 at 18.)

## II.    **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure[2] 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

---

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment, a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine [dispute] for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014).

> A nonmoving party has created a genuine [dispute] of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine [dispute] as to a material fact for trial.

*Serodio*, 27 F. Supp. 3d at 550.

Pursuant to Rule 56(e)(2) and Local Civil Rule 56.1, where the moving party files a proper statement of material facts and the non-moving party fails to file a responsive statement of disputed material facts, the Court is free to consider the moving party's statement of material facts undisputed and therefore admitted for the purposes of resolving the motion for summary judgment. *See, e.g., Ruth v. Sel. Ins. Co.*, No. 15-2616, 2017 WL 592146, at *2-3 (D.N.J. Feb. 14, 2017).

Even where the defendants' statement of material facts is deemed admitted and unopposed, a district court is still required to "satisfy itself that summary judgment is proper because there are no genuine disputes of material fact and that [defendants are] entitled to judgment as a matter of law" in order to grant summary judgment. *Id.* at 2 (citing *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990)).

## III.   DISCUSSION

### A.   Plaintiff's Motion for Emergent Relief

Although Plaintiff did not file formal opposition in this matter, on October 23, 2025, he filed a purported motion for emergent relief. (ECF No. 336.) Plaintiff contended that he had been placed in investigatory detention and did not have full access to his legal materials and requested a Court order directing that he be provided with those materials for the litigation of this matter. (*Id.*) On November 3, 2025, however, Plaintiff filed correspondence informing the Court that: (1) he had been cleared of any institutional charges; (2) he was being released from investigative detention; and (3) prison officials had returned his property, although he had not had access to it yet because of a prison lockdown unrelated to Plaintiff. (ECF No. 339.) Plaintiff did not thereafter assert that he was unable to access his property or that he was still being denied his legal materials. As Plaintiff's motion sought only access to his legal materials in investigative detention, and as Plaintiff is no longer in investigative detention and has apparently had all of his possessions and materials returned to him, Plaintiff's motion (ECF No. 336) appears to be moot and must be denied as such at this time.

### B.   Plaintiff's Eighth Amendment Conditions Claims

Defendants contend that they are entitled to summary judgment as to Plaintiff's Eighth Amendment conditions of confinement claims because Plaintiff failed to provide sufficient evidence to show that Defendants were personally involved in the alleged conditions and has, in

6

any event, failed to provide evidence to support the proposition that any named Defendant had the necessary mental state to support liability.

A defendant may only be held liable in a civil rights proceeding where he was personally involved in the alleged wrong. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Because supervisory defendants may not be held vicariously liable for the actions of their subordinates and must have personal involvement to support a claim for relief, supervisors may generally only be held liable if: (1) they were directly involved in wrongful deeds; (2) had actual knowledge of and acquiesced in the deeds of their subordinates; or (3) they created a policy or custom which was the moving force behind the alleged wrong. *Chavarriaga*, 806 F.3d at 222; *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). That a particular individual reviewed or responded to a grievance or letter complaint is generally insufficient to establish personal involvement. *See, e.g., Dooley v. Wetzel*, 957 F.3d 366, 372-74 (3d Cir. 2020) (agreeing that alleging a defendant's involvement arises out of reviewing or responding to grievances "fail[s] to adequately state a claim against [that] specific individual[]"); *Stuart v. Lisk*, 645 F. App'x 197, 200-01 (3d Cir. 2016).

The claims at issue here relate to the conditions of Plaintiff's confinement while in the MCU, which Plaintiff contends were inhumane. To succeed on a claim for a violation of the Eighth Amendment based on unduly harsh conditions of confinement, a prisoner must establish that he was exposed to "objectively, sufficiently serious" conditions which denied the plaintiff the "minimal civilized measure of life's necessities," and that the defendants, through their acts or omissions, were "deliberate[ly] indifferen[t] to [the plaintiff's] health or safety." *See Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Deliberate indifference in this context requires a showing that the official in question

"knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 445. Such knowledge can be shown through evidence that a "risk of harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past such that defendants must have known about the risk." *Id.* (quoting *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3d Cir. 2010)).

In this matter, Plaintiff raises the following issues: (1) temporary deprivations of bathroom and water access during thrice weekly, ninety-minute recreation periods;[3] (2) smells and vermin infestations resulting from inmates in nearby cells failing to clean up after themselves in relation to uneaten food and bathroom use; and (3) having to endure the sounds of special needs inmates in neighboring cells banging on doors and cell walls. Except for the recreation facilities limitations, Plaintiff does not contend that these issues are the result of actions by prison officials. Instead, Plaintiff testified at his deposition that each of the conditions-related issues he raised in this matter were the result of the other inmates at the MCU, either by allowing their cells to become putrid or infested, or by making themselves a nuisance and thereby impacting Plaintiff's day-to-day life. Plaintiff's claims thus do not rest on the idea that Defendants directly caused any of the challenged conditions other than the bathroom and water limitations during recreation periods but instead rest on Defendants' alleged failure to ameliorate the conditions of the MCU.

Even assuming, *arguendo*, that Plaintiff's conditions were sufficiently serious, Plaintiff has failed to provide sufficient evidence to permit a reasonable fact finder to infer that Defendants

---

[3] Plaintiff does not allege that he was completely deprived of bathroom or water access, only that he lacked them during recreation. Courts have frequently found that temporary deprivations of access to facilities or running water for a few hours at a time generally are not severe enough to amount to Eighth Amendment violations. *See, e.g., Evans-Salter v. Wetzel*, No. 19-950, 2020 WL 5819764, at *3 (M.D. Pa. Sep. 30, 2020) (collecting cases finding no constitutional violation for denial of bathroom access for periods of between twenty minutes and eight hours at a time); *Shoffler v. City of Wildwood*, No. 17-4859, 2019 WL 4165305, at *12 (D.N.J. Sep. 3, 2019); *Cook v. Wetzel*, No. 13-6575, 2015 WL 2395390, at *5 (E.D. Pa. May 20, 2015).

were deliberately indifferent to a serious risk of harm to Plaintiff. Plaintiff named as Defendants a number of high-level state officials—such as former Governor Christie and former NJDOC Commissioner Lanigan—as well as a number of supervisory officials at New Jersey State Prison and a several individuals who had been members of the MCURC at various times. At his deposition, Plaintiff connected these Defendants to his claims only through grievances or letter complaints he wrote, or through statements that he had private conversations with some of the Defendants about his issues with the MCU. Plaintiff, however, did not elaborate as to what those conversations involved, what issues were discussed, or whether he specifically made Defendants aware of any of the conditions of confinement issues that are the focus of this matter. Indeed, Plaintiff's deposition testimony instead suggests that he was chiefly interested in reasserting his challenges to the procedures used to confine individuals to the MCU rather than any specific condition of his confinement apart from possibly the issue of the water and bathroom access during recreation periods.

Plaintiff has also not provided any clear evidence as to how long the conditions in question were in place or how obviously noticeable any of the conditions were to those not in the MCU on a regular basis. Instead, Plaintiff connects Defendants to his claims chiefly through the filing of grievances or letter complaints. Given the lack of clear evidence that Plaintiff discussed any of these conditions of confinement issues with Defendants directly or in detail, and any clear evidence that the issues in question were patently obvious during the few instances in which the named Defendants were briefly present in the MCU, the record does not permit the inference that Defendants knew of the conditions in question or knew that they presented a serious risk of harm to Plaintiff's health or safety.

The record further undermines Plaintiff's Eighth Amendment claims because various documents, including Plaintiff's own grievances and letters, indicate that steps were taken to

address Plaintiff's complaints. For example, although Plaintiff complained that certain cells in the unit smelled strongly of bodily waste, the same complaint admits that the "medical [department] clean[ed the cell] with bleach," even though it had not entirely removed the smell. (*See* ECF No. 342-1 at 129.) Likewise, when Plaintiff complained about lack of access to water during recreation periods, prison staff provided Plaintiff and other similarly situated inmates with "cold water in coolers" during recreation. (*See id.* at 132.) These direct responses to Plaintiff's complaints about the MCU's conditions do not demonstrate deliberate indifference; instead, they indicate that prison staff were responsive to Plaintiff's complaints and sought to address the issues in question.

Plaintiff has likewise not identified any specific prison policy for any issue other than the yard bathroom and yard access issues that could be said to have contributed to the conditions Plaintiff seeks to challenge. Plaintiff has also not identified any clear policy that should have been adopted which would have meaningfully responded to the conditions faced by Plaintiff in the MCU. Considered in its entirety, the record before the Court does not permit a reasonable trier of fact to find that Defendants were either directly involved in the alleged harsh conditions—most of which Plaintiff readily admits were caused by other inmates placed in the MCU rather than by prison staff themselves—or were deliberately indifferent to a substantial risk of harm to Plaintiff. Defendants are thus entitled to summary judgment as to Plaintiff's Eighth Amendment claims.[4]

### C.    Plaintiff's Due Process Claims

In his remaining claims, Plaintiff contends that he was denied Due Process in various ways, such as: (1) in his MCU placement hearings; (2) regular custody reviews; and (3) annual review

---

[4] Because Defendants are entitled to summary judgment on the merits of Plaintiff's Eighth Amendment claims for the reasons expressed above, the Court does not address Defendants' issue and claim preclusion arguments as to the Eighth Amendment claims. Likewise, because Defendants are entitled to summary judgment as to Plaintiff's Eighth Amendment claims, the Court need not address at this time Defendants' argument that Plaintiff cannot seek compensatory damages for his Eighth Amendment claims for lack of a concrete injury.

hearings. Defendants contend that Plaintiff received all process which was due, and that they are therefore entitled to summary judgment.

A prisoner only has a right to Due Process related to specific prison placement decisions where those decisions impugn the prisoner's liberty interest in avoiding "atypical and significant hardship[s] on the inmate in relation to the ordinary incidents of prison life." *Allah v. Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Court of Appeals for the Third Circuit has held that indefinite placement in a restrictive housing unit—amounting to solitary confinement for the vast majority of the prisoner's stay with significant restrictions not shared by the prison's general population—will trigger a liberty interest and result in an entitlement to Due Process. *Id.*; *see also Shoats v. Horn*, 213 F.3d 140, 143-44 (3d Cir. 2000) (finding placement in solitary confinement for years at a time sufficient to require Due Process protections).

In their motions, Defendants do not dispute that Plaintiff's placement in the MCU posed a significantly atypical hardship to affect a recognized liberty interest and entitle Plaintiff to Due Process protections but, instead, argue that Plaintiff received sufficient process to meet the requirements of Due Process. Given the considerable restrictions placed on MCU inmates, as well as the significant amount of time spent in what essentially equates to solitary confinement with little interaction beyond short periods of time spend in recreation, and Plaintiff's years' long indefinite placement in the MCU, the Court finds that Plaintiff was entitled to Due Process protections in relation to his placement. *See, e.g.*, *Obataiye v. Lanigan*, No. 14-5462, 2016 WL 5387626, at *7 (D.N.J. Sep. 26, 2016); *see also Allah*, 574 F. App'x at 139-40; *Layton v. Beyer*, 953 F.2d 839, 846-47 (3d Cir. 1992).

That Plaintiff had a protected liberty interest, however, is not the end of the issue. Instead, the question becomes what procedures were required to protect that interest. At minimum, inmates

11

subjected to lengthy and indefinite placement in a unit such as the MCU are entitled to notice of the intended placement decision, an opportunity to present their positions regarding the placement question—either written or in person—and a good faith review of the relevant evidence by the decision maker issuing the final placement decision. *Shoats*, 213 F.3d at 144-45. The Due Process Clause does not require full adversarial proceedings for such placements. *Id.* For indefinite, long term solitary placements, prisoners are likewise entitled to regular review of their placement that is not a "sham" or "perfunctory" in nature. *Id.* at 145-47; *Green v. Johnson*, No. 15-8531, 2017 WL 3784034, at *4 (D.N.J. Aug. 31, 2017). The touchstone of Due Process in this context is thus notice and a meaningful opportunity to be heard, even if in an informal, non-adversarial proceeding. *Allah*, 574 F. App'x at 140; *Shoats*, 213 F.3d at 144-45.

Regulations controlling placement in the MCU provide for exactly these protections. As the Third Circuit explained, "there are explicit substantive predicates that must be met before an inmate may be placed in the [MCU] or Prehearing [MCU] under the New Jersey regulations. The inmate must present a threat to the safety of others, a threat to property, or a threat to the operation of the facility. Absent these substantive predicates, the administrative officials have no discretion to place an inmate in [MCU] or Prehearing [MCU]." *Layton*, 952 F.2d at 846-47. State regulations and relevant Due Process interests also require that the MCURC make its initial placement decision within a reasonable time of a prisoner being placed in prehearing MCU status. *Id.* at 850 (noting a regulation requiring the initial decision within five working days but finding that Due Process only required that this initial decision be provided within a reasonable time).

Inmates are entitled to notice at least twenty-four hours in advance of an MCURC hearing on a placement decision, an opportunity to be heard as part of the placement decision process, and an opportunity to present evidence and witnesses if deemed appropriate and reasonably available by the MCURC. *See N.J. Admin. Code* § 10A:5-2.6. Regulations also provide for the development

12

of a record of proceedings, a written notice of decision, and both regular and annual review hearings at least every ninety days. *Id.* Additionally, inmates are entitled to appeal the MCURC's placement decision within the prison, *see* N.J. Admin. Code § 10A:5-2.7, and thereafter to the Appellate Division of the Superior Court of New Jersey. *See* N.J. Ct. R. 2:2-3(a)(2).

The facts before the Court indicate that the process Plaintiff received essentially complied with these requirements. After Plaintiff was placed into Prehearing MCU custody, he was provided with written notice and an initial placement hearing, which was slightly delayed to provide for a hearing before a sufficient number of MCURC members. *See Allah*, 2008 WL 2245599, at *1-2. Plaintiff was provided with a memorandum detailing the evidence against him that indicated he was placed into the MCU based on the smuggling scheme, which had brought phones and contraband into the prison, as well as a written decision finding that Plaintiff was a threat to the safety and security of the prison. *Id.* at *2-3. Plaintiff appealed, and the Associate Administrator, Defendant Ricci, upheld the placement decision. *Id.* Plaintiff appealed to the Appellate Division, which rejected as meritless his contentions that the MCURC decision was contrary to state regulations. *Id.* at *3-4. Plaintiff thereafter received regular routine and annual reviews and was able to appeal the decisions continuing his MCU confinement. *See Allah v. N.J. Dep't of Corr.*, No. A-3837-10T1, 2012 WL 2345390, at *1-5 (N.J. App. Div. June 21, 2012); *Allah v. N.J. Dep't of Corr.*, No. A-0330-12T1, 2016 WL 4821207, at *1-11 (N.J. App. Div. Sept. 12, 2016).

With respect to these reviews, the only clear fault the state courts found in the process Plaintiff was provided was that in his initial placement, Defendant DeFilippo did not actually serve her role as a MCURC member insomuch as she did not weigh the evidence against Plaintiff herself, and was apparently unaware that she was intended to be a decisionmaker in that process. *See Allah*, 2016 WL 4821207, at *8-9. The Appellate Division, however, remanded for Plaintiff to

13

receive a new initial placement hearing with a full complement of MCURC decisionmakers to reconsider the evidence supporting his initial placement. *Id.* at *9-10. Plaintiff received this rehearing, was provided with the necessary procedural protections during the hearing and was afforded a full appeal to the Appellate Division, which upheld the rehearing's determination that Plaintiff was properly placed in the MCU. *Allah*, 2020 WL 1189745, at *1-7. Apart from DeFilippo's failure to properly serve her role in his initial placement hearing, then, it appears that Plaintiff received all the process to which he was entitled related to his MCU placement.

In his deposition, Plaintiff expressed a generalized sentiment that his placement proceedings did not comport with his own personal interpretation of the state regulations to support his contention that his hearings did not comport with Due Process. He did not provide specific testimony about violations of the regulations or clearly indicate which hearings directly suffered from any alleged procedural faults. Rather, Plaintiff expressed general disagreement with the rules applicable to MCU placements. Plaintiff only provided clear testimony regarding three Defendants: (1) DeFilippo, who did not properly serve in her role as a MCURC member in Plaintiff's initial placement hearing; (2) Defendant Ismail, who Plaintiff asserts did not weigh evidence or render a decision at any review hearing of which she was a part based on an interrogatory response in which she stated that she did not "vote, review evidence or provide input with respect to any MCURC hearing that was attended for Plaintiff Allah" (*see* ECF No. 342-1 at 75-77; ECF No. 236-1 at 37); and (3) Defendant Raupp, who Plaintiff believes misstated the facts in acting as the recordkeeper who made a written record of Plaintiff's MCU review hearings. (*Id.* at 67-70.)

Because Plaintiff appears to have received all of the process that was required by the regulations and Due Process, and he has failed to point out any specific instance in which Defendants other than Raupp, DeFilippo, or Ismail failed to meet the requirements of the

14

applicable regulations, all Defendants other than Raupp, DeFilippo, and Ismail are entitled to summary judgment as to Plaintiff's Due Process claims.

As to Defendant Raupp, Plaintiff testified that she included in the hearing record of one hearing that Plaintiff's continued placement was based, in part, on a failure to complete all assigned programs, which Plaintiff believes was inaccurate considering Raupp's knowledge that he had completed at least some of the assigned programs. (*Id.* at 74-75.) Having reviewed the records of the decisions of the MCU regarding Plaintiff, it does appear that on certain occasions the failure to complete *all* assigned programs was noted. It is not clear, however: (1) whether this alleged failure had any actual bearing on the outcome of Plaintiff's placement (*see* ECF No. 306-5 at 1-29); (2) that Plaintiff had completed all programs required of him, or if he had only completed a single program with others to follow; or (3) that Raupp's records were actually inaccurate. Even if the written records of the decisions Raupp prepared were inaccurate to the extent that they misstated that Plaintiff had not completed all assigned programs, that alone is not sufficient to indicate that Plaintiff was denied Due Process because Plaintiff was provided administrative and Appellate Division appeals in which he was provided ample opportunity to correct what he may have perceived as misstatements in the records of his hearings. As such, Raupp's alleged inaccurate record keeping does not appear to have deprived Plaintiff of Due Process and thus is insufficient to support a claim for relief against her. As no reasonable factfinder could find that Plaintiff was deprived of Due Process by the alleged mistakes in the record, which Plaintiff had ample opportunity to address on appeal, Defendant Raupp is entitled to summary judgment as to Plaintiff's Due Process claims.

As to Defendants DeFilippo and Ismail, however, Plaintiff has provided testimony that they stated on the record that they did not weigh evidence or render a decision during their service as MCURC members attending Plaintiff's hearings, and the record of this matter and Ismail's

15

interrogatory response support this testimony. In so doing, they essentially deprived Plaintiff of one-third of the decision-making body to which he was entitled under the appropriate regulations. Indeed, the Appellate Division, in remanding[5] for a new review hearing in light of DeFilippo's testimony that she had not weighed the evidence and helped to render a decision, essentially determined that Plaintiff's procedural rights as to MCU placement had not been met in the original proceeding. As a rational fact finder could therefore potentially find in Plaintiff's favor that the failure of DeFilippo and Ismail to serve as a decisionmaker during MCU placement and review hearings deprived Plaintiff of process, Defendants DeFilippo and Ismail are not entitled to summary judgment as to Plaintiff's Due Process claims.

Defendant Ismail contends, nevertheless, that she should still be entitled to summary judgment as to Plaintiff's Due Process claim because she is entitled to qualified immunity as the right in question was not clearly established at the time of the proceedings. The doctrine of qualified immunity shields government officials who perform discretionary functions "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015)

---

[5] That Plaintiff eventually received a new hearing in relation to DeFilippo's failure to weigh the evidence does not negate the Due Process issue of being denied part of the decision-making body to which he was entitled in his placement procedure. Even assuming the re-done initial placement hearing rendered any request for injunctive relief moot by providing new process sufficient to support a continued MCU placement, it does not undo the fact that Plaintiff's rights may have been violated in his initial proceeding and that Plaintiff may therefore be entitled to, at least, nominal damages. *See, e.g., Higgins v. Beyer*, 293 F.3d 683, 694 n.3 (3d Cir. 2002) (the availability of nominal damages for procedural due process violations does not require actual injury; a plaintiff who is able to receive relief from the alleged consequences of a due process violation through other means can still obtain nominal damages for the due process violation itself through a civil rights proceeding).

16

(quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)). In determining whether immunity applies, courts use a two-pronged test: first, "a court must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right'[, a]nd second, the Court must determine 'whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

As explained above, a rational fact finder could find a violation of Plaintiff's Due Process rights as to Defendants Ismail and DeFilippo in this matter. The remaining question is whether that right was clearly established at the time of the violation. For a claim to be clearly established, "existing precedent [must have] placed the . . . constitutional [right in] question *beyond debate.*" *Id.* at 638. Except for cases involving "obvious violations" of prior Supreme Court rulings, a plaintiff's claim will only be "clearly established" where "the violative nature of the *particular* conduct [was] clearly established." *James v. N.J. State Police*, 957 F.3d 165, 169 (3d Cir. 2020). The conduct in question must therefore be defined at an "appropriate level of specificity," *Spady*, 800 F.3d at 638, and, when so defined, the plaintiff must identify "a case where an officer acting under similar circumstances . . . was held to have violated" the constitutional provision in question. *James*, 957 F.3d at 169-70.

The right at issue in Plaintiff's claims against DeFilippo and Ismail is the right to have the appropriate decisionmaker in an indefinite solitary confinement prison placement actually weigh the evidence presented and reach an appropriate decision. Where inmates have protected liberty interests at stake, the right to an appropriate decisionmaker who actually weighs the evidence presented and reaches a conclusion after the inmate is provided notice and an opportunity to be heard has been a cornerstone of clearly established federal law for decades. *See, e.g., Wolf v. McDonnell*, 418 U.S. 539, 563-65 (1974); *see also Hewitt v. Helms*, 459 U.S. 460, 473-74 (1983); *Shoats*, 213 F.3d at 144-45. It was thus clearly established that inmates, in situations sufficiently

analogous to Plaintiff's in this instance, do have a right for the decisionmaker in their placement

hearings to *actually consider, weigh, and reach a decision* on the evidence presented. Ismail's

qualified immunity arguments must therefore fail as to Plaintiff's remaining Due Process claims

against Ismail and DeFilippo.

Finally, Defendants argue that Plaintiff's remaining Due Process claims against Ismail and

DeFillipo are barred by the principles of *res judicata* and New Jersey's entire controversy doctrine.

As the Third Circuit has explained,

> The entire controversy doctrine is essentially New Jersey's specific,
> idiosyncratic, application of traditional res judicata principles. The
> doctrine embodies the principle that the adjudication of a legal
> controversy should occur in one litigation in only one court;
> accordingly all parties involved in a litigation should at the very least
> present in that proceeding all of their claims and defenses that are
> related to the underlying controversy. The purposes of the entire
> controversy doctrine are threefold: (1) the need for complete and
> final disposition through the avoidance of piecemeal decisions;
> (2) fairness to the parties to the action and those with a material
> interest in the action; and (3) efficiency and the avoidance of waste
> and the reduction of delay.

> In determining whether a claim is barred by the doctrine, a court's
> central consideration is whether the claim arise[s] from related facts
> or the same transaction or series of transactions. It is the core set of
> facts that provides the link between distinct claims against the same
> or different parties and triggers the requirement that they be
> determined in one proceeding. Additionally, the entire controversy
> doctrine applies only when a prior action based on the same
> transactional facts has been tried to judgment or settled.

> However, the doctrine is constrained by principles of equity. It
> remains an equitable rule of preclusion whose application is left to
> judicial discretion based on the factual circumstances of individual
> cases. Accordingly, the entire controversy's equitable nature bars
> its application where to do so would be unfair in the totality of the
> circumstances and would not promote its objectives, namely, the
> promotion of conclusive determinations, party fairness, and judicial
> economy and efficiency.

*United States ex rel. Charte v. Am. Tutor, Inc.*, 934 F.3d 346, 351 (3d Cir. 2019) (internal

quotations and citations omitted).

A basic requirement of the doctrine, however, is that "the forum of the earlier action . . . must have been able to provide all parties with the same full and fair opportunity to litigate the issues and with the same remedial opportunities as the [later] forum." *McDade v. P&P Assocs., Inc.*, No. A-0683-21, 2023 WL 8743169, at *5 (N.J. Super. Ct. App. Div. Dec. 19, 2023). Here, the prior actions were all appeals to the Appellate Division from administrative prison proceedings, not civil actions. Those appeals provided only a single potential remedy – the reversal and remand for further proceedings. The chief remedy remaining to Plaintiff in this matter—damages of at least a nominal character—was entirely unavailable in his appeals of prison administrative decisions, nor could Plaintiff bring claims against any of the numerous named Defendants in such an appeal seeking at least nominal damages. As the remedial opportunities were entirely different between the administrative appeals and this civil rights proceeding, the prior administrative appeals do not bar Plaintiff from seeking damages from Defendants DeFilippo and Ismail under the entire controversy doctrine.

Defendant DeFilippo also argues that general res judicata principles bar Plaintiff's Due Process claims against her separate and apart from the entire controversy doctrine. The doctrine of res judicata generally bars claims where there has been a final judgment on the merits in a prior suit which involved the same parties or their privies and the subsequent suit raises claims based on the same causes of action. *Riley v. DeCarlo*, 532 F. App'x 23, 26-27 (3d Cir. 2013). In *Jones v. Holvey*, 29 F.3d 828, 831-32 (3d Cir. 1994), the Third Circuit held that it would be inappropriate to apply res judicata to bar a section 1983 claim for damages because of an earlier prison disciplinary appeal raising similar claims where the damages claims would most likely not have been heard or considered on the merits by the Appellate Division had the plaintiff sought to raise them. The current situation is analogous in that the prior proceeding here was an administrative appeal to the Appellate Division from Plaintiff's MCU proceedings, and it is almost certain that

19

the Appellate Division would not have considered Plaintiff's section 1983 damages claims in deciding that appeal had Plaintiff sought to raise them. Thus, here, as in *Jones*, application of res judicata to bar Plaintiff's current claim for, at least, nominal damages would be inappropriate. DeFillipo is therefore not entitled to judgment at this time on res judicata grounds. *Id.* Defendants' motions for summary judgment shall therefore be granted in part and denied in part.

## IV.    CONCLUSION

The moving Defendants' Motions for Summary Judgment (ECF Nos. 305, 306) are granted in part and denied in part. Judgment shall be entered in favor of all Defendants on Plaintiff's Eighth Amendment claims, and as to all Defendants other than DeFilippo and Ismail as to Plaintiff's Due Process claims. Plaintiff's Motion for emergent relief (ECF No. 336) is denied. An appropriate order follows.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: 5/28/26